IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LINDA M. KNIGHTEN,

      Plaintiff,

   v.

OMNI HOTEL,

      Defendant.

_____/

No. C 12-2296 CW

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY
JUDGMENT (Docket
No. 29)

Plaintiff Linda Knighten brought this suit against Defendant Omni Hotel under the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12900 et seq.  Defendant now moves for summary judgment on all claims.  After considering the parties' submissions and oral argument, the Court grants the motion.

BACKGROUND

The following facts are undisputed except where otherwise noted.  Plaintiff worked as a cook in the kitchen at the Omni Hotel in San Francisco from January 2002 until her termination in October 2010.  Declaration of Linda Knighten ¶ 2; Declaration of Joselyne Simonsen ¶ 3.  During that time, she clashed frequently with her supervisors and co-workers and received numerous sanctions for poor performance, including negative employee evaluations, formal disciplinary warnings, and suspensions.  Simonsen Decl., Exs. A, B.

These problems began in January 2003 when Plaintiff received her first formal warning from management for arguing with her kitchen supervisors and refusing to follow their cooking

instructions.  Id., Ex. A, 1/13/03 Warning Notice, at 123-24.[1]
The warning notice Plaintiff received stated, "Failure to conduct
yourself as a culinary professional may result in further written
warnings up to and including termination."  Id. at 124.  In her
annual performance review one month later, Plaintiff's supervisor
noted that she needed to "improve [her] organization and cooking
skills."  Id., 2/27/03 Associate Performance Appraisal, at 150.

In April 2003, Plaintiff received a second written warning,
this time for arriving two hours late for a 6:00 a.m. shift.  Id.,
4/30/03 Warning Notice, at 118-20.  The notice explained that
Plaintiff's tardiness caused delays in preparing several food
orders scheduled for hotel events that day.  Id. at 120.  It also
notified Plaintiff that her tardiness was "unacceptable" and that
"[f]urther instances will result in disciplinary action, up to and
including suspension and/or termination."  Id.

Four months later, in August 2003, Plaintiff received another
written warning for tardiness after she called her supervisor
forty-five minutes after the start of her scheduled shift to
report that she would be late because she overslept.[2]  Id.,
8/26/03 Warning Notice, at 104-05.  Id. at 104.  The warning
notice explained that hotel employees were required to give their
supervisors advance notice whenever they planned to miss part of a
scheduled shift.  Id.  It also warned Plaintiff, once again,
"Future instances of failure to follow hotel policy will result in

---

[1] All page citations to documents in Plaintiff's personnel file and
handwritten journal notes are to OMNI Bates-stamp page numbers.
[2] According to a handwritten note in Plaintiff's personnel file,
this written warning was reduced to a verbal warning in November 2004
for reasons that are not stated in the file.  Id.

United States District Court
For the Northern District of California

disciplinary action up to and including suspension and/or termination." Id.

Despite this warning, Plaintiff continued to violate the hotel's employee attendance policies. Between December 2004 and May 2006, she received seven additional warnings for infractions including tardiness, absenteeism, and failure to provide sufficient notice before missing work. Id. at 89-90, 92-97, 1484-89. She has not presented any evidence to dispute the allegations underlying these attendance violations or any of the earlier violations.

In February 2007, Plaintiff received a one-day suspension for failing to take a timely lunch break and improperly clocking out for a rest break. Id., 2/8/07 Suspension Notice, at 76. Eight months later, she was placed on a "work improvement plan" to help her increase her productivity. Id., 10/30/07 Work Improvement Plan, at 74-75. The plan was also intended improve her attendance habits and her ability to follow supervisors' instructions. Id. at 75. It specifically noted that, over the previous seven months, Plaintiff had recorded nine absences and reported late for work fifteen times. Id.

In January 2008, Plaintiff was suspended for three days after she failed to report for an 8:00 a.m. shift. Id., 1/12/08 Suspension Notice, at 73. Later that week, she received her annual performance review, which specifically noted that Plaintiff "was issued a work improvement plan and has yet to show improvement on the areas of concern." Id., 1/14/08 Associate Performance Appraisal, at 141.

United States District Court
For the Northern District of California

        Eleven months later, in December 2008, Plaintiff received
another three-day suspension for failing to report for a scheduled
shift.  Id., 12/04/2008 Suspension Notice, at 69.  The notice
explained that, because Plaintiff had improved her attendance in
recent months, termination was not warranted at that time;
however, the notice also stated that it would be Plaintiff's "last
and final" warning about attendance policy violations.  Id.

        Two months later, in February 2009, Plaintiff received a
"non-disciplinary memo" from her supervisor addressing the
"argumentative nature of the working relationship" between her and
a co-worker.  Id., 2/10/09 Non-Disciplinary Memo, at 68.  The memo
focused on Plaintiff's inability to work cordially with another
kitchen employee and explained that "[c]ooperation is an
expectation of employment."  Id.  The memo directed Plaintiff to
strive to conduct herself "in a professional and polite manner."
Id.

        In December 2009, Plaintiff received a ten-day suspension for
removing certain guest records from the hotel without permission.
Id., 12/1/09 Suspension Notice, at 54-57.  Although the notice
does not identify the exact nature of the hotel records, it notes
that they were "especially sensitive as they contain private guest
information" and were "not to be used outside of the Hotel."  Id.
at 57.  It warned Plaintiff that removing the records was a "very
serious" breach of hotel policy and that this suspension, like the
previous suspension, was being issued "in lieu of termination."
Id.  Plaintiff admits that she took these documents home, Knighten
Depo. 163:6-:8; she asserts that she did so "in the course of
[her] work as Shop Steward" for her union.  Knighten Decl. ¶ 9.

                                    4

The following month, in January 2010, Plaintiff was suspended again for calling in sick less than ten minutes before the beginning of her shift.  Simonsen Decl., Ex. A, 1/11/10 Suspension Notice, at 52-53.  The notice stated that, in light of Plaintiff's past disciplinary record, the fifteen-day suspension would be Plaintiff's "final warning."  Id. at 53.  The suspension was, once again, issued "in lieu of termination."  Id.

In July 2010, Plaintiff was placed on a second work improvement plan.  Id., 7/6/10 Performance Issues Memorandum, at 47-50.  The executive chef sent Plaintiff a three-page memorandum that outlined the hotel's reasons for implementing the new plan. Id.  The memorandum identified several instances when Plaintiff failed to prepare dishes as requested and summarized Plaintiff's recent disciplinary history.  Id. at 49.  It concluded by noting that, if Plaintiff failed to improve her job performance, "the Hotel will have no choice but to terminate [her] employment."  Id. at 50.  Plaintiff signed the memorandum on July 6, 2010, acknowledging that she had discussed the new plan with the chef and affirming that she would be subject to its terms.  Id.

Two months later, in September 2010, the hotel opened an investigation into a series of incidents that occurred in the kitchen on September 1, 2010 and involved Plaintiff.  Id., 10/7/10 Termination Notice, at 22.  Although Plaintiff's personnel file does not describe the incidents in detail,[3] Plaintiff herself

---

[3] The only document Omni has submitted describing the September 1, 2010 incident is an unlabeled spreadsheet that contains dates and notes about Plaintiff's conduct.  See Simonsen Decl., Ex. A, at 35.  Because Omni does not identify what this document is, when it was produced, or why it was placed in Plaintiff's personnel file, the Court does not rely on the document here.

United States District Court
For the Northern District of California

asserts that the investigation was prompted by her co-workers'
allegations that she: (1) failed to defrost chicken properly;
(2) spoiled a pot of rice; and (3) used company time to arrange
flowers for herself.  Knighten Decl. ¶ 11.  Plaintiff concedes
that she spoiled the pot of rice and admits that she used a
defrosting method that her supervisor had previously instructed
her not to use.  Id. ¶ 13; van Krieken Decl., Ex. D, Pl.'s Further
Resp. Interrog. No. 5, at 3-5.  She asserts, however, that she
arranged the flowers during one of her breaks, not on company
time.  Id. ¶ 14.

On October 7, 2010, the hotel terminated Plaintiff's
employment based on the results of its investigation and on her
"continued poor performance while on a Work Improvement Plan."
Simonsen Decl., Ex. A, 10/7/10 Termination Notice, at 23.  Omni's
Area Director of Human Resources, Joselyne Simonsen, who approved
Plaintiff's termination, asserts that "the Hotel made the decision
to terminate her employment based on her extensive disciplinary
record, her failure to meet performance standards, her failure to
comply with supervisors' requests, and her failure to complete job
assignments satisfactorily and meet Hotel expectations."  Simonsen
Decl. ¶ 17.

In April 2012, a year and a half after her termination,
Plaintiff filed this action against Omni.  She asserts five causes
of action under FEHA: discrimination on the basis of race,
discrimination on the basis of gender, retaliation, harassment,
and failure to prevent discrimination and harassment.  Docket No.
1, Compl. ¶¶ 16-20.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  <u>Nissan</u>, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. <u>Id.</u>  This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  <u>Id.</u> at 1107.

DISCUSSION

A.   Race and Gender Discrimination (First and Second Causes of Action)

Plaintiff asserts that Omni discriminated against her on the basis of her race and gender.  Specifically, she alleges that, as one of only a few African Americans and women employed on the kitchen staff, she was unfairly subject to excessive disciplinary sanctions and termination.  Compl. ¶ 5.

To determine whether an employment discrimination plaintiff can survive a defendant's motion for summary judgment, courts typically use the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).  Although this framework was originally created to evaluate Title VII claims, California courts have since adopted it to analyze FEHA claims, as well.  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000); Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).

Under this framework, the plaintiff must first establish a prima facie case of discrimination by presenting evidence that he or she: (1) belongs to a protected class; (2) was performing the job duties adequately; (3) was subject to an adverse employment decision; and (4) was treated differently than similarly situated employees who are not members of the plaintiff's protected class. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993) (citing McDonnell Douglas, 411 U.S. at 802, and Burdine, 450 U.S. at 255). If the plaintiff does not satisfy this initial burden, then the defendant is entitled to summary judgment.

United States District Court
For the Northern District of California

However, if the plaintiff does satisfy this initial burden, then a presumption of discriminatory intent arises. Id. To rebut this presumption, the defendant must offer a legitimate, non-discriminatory reason for its challenged employment decision. Id. at 506-07. If the defendant provides such a reason, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is pretextual and that the defendant did, in fact, act with discriminatory intent. Id. at 510-11. The plaintiff can only satisfy this ultimate burden by producing "specific, substantial evidence of pretext." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983). "[I]n those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, the plaintiff has failed to raise a triable issue of fact." Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994).

Here, Plaintiff has failed to make out a prima facie case of discrimination. Although she has presented evidence that she is a member of two protected classes and that she was subject to adverse employment actions, she has not offered sufficient evidence to support an inference that she was treated differently than any similarly situated employee. Thus, even assuming that she was performing her job duties adequately -- a point Omni contests -- Plaintiff has failed to satisfy her initial burden of production.

Plaintiff states in her declaration that she was "treated differently from other Cooks." Knighten Decl. ¶ 3. In particular, she asserts that she was required to help other cooks

United States District Court
For the Northern District of California

whenever they needed assistance but was barred from receiving any help from them in return. Id. However, Plaintiff does not identify any specific instance when this rule was actually followed or enforced nor does she explain how or when she first learned of it. She also does not explain how the rule comports with her admission that she received "several" offers of help from another kitchen employee in October 2009. Reply Declaration of Lisa M. van Krieken, Ex. D, 10/28/09 Journal Entry, at 240. Most importantly, Plaintiff fails to identify the race or gender of any of the hotel's other cooks, making it impossible to infer whether any of them were treated more favorably on account of race or gender.[4] As such, Plaintiff's declaration does not support an inference that she was subject to differential treatment on account of her membership in a protected class.

Although Plaintiff asserts that she was subject to excessive disciplinary sanctions because of her race and gender, none of her evidence suggests that she was subject to harsher sanctions than similarly situated employees. Plaintiff has not identified, for

---

[4] Plaintiff asserts in her declaration that she was the "only African American and the only female employed in the kitchen." Knighten Decl. ¶ 2. Although this statement is relevant to Plaintiff's allegations of differential treatment, the Court does not rely on it here because it conflicts with other sworn statements she has made. Specifically, the statement contradicts the testimony Plaintiff gave during her deposition, when she accused some of her co-workers of making racially insensitive comments about another African-American chef. See Knighten Depo. 224:18. The statement also contradicts Plaintiff's subsequent assertion -- in the same declaration -- that other female employees worked in Omni's kitchen during Plaintiff's employment there. See Knighten Decl. ¶ 2. The Court therefore disregards Plaintiff's assertion that she was "the only African American and the only female employed in the kitchen" under the "sham" declaration rule. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir. 1991) (holding that a party cannot create a dispute of fact by contradicting his or her own prior deposition testimony).

United States District Court
For the Northern District of California

instance, any employee who was subject to lesser disciplinary sanctions for violating the same hotel policies that she violated. In fact, during her deposition, Plaintiff acknowledged that she knew of several white male employees, including kitchen staff, who were disciplined for similar violations.  Declaration of Lisa M. van Krieken, Ex. A, Knighten Depo. 249:5-:21, 337:1-:16. Plaintiff points to just one instance where the hotel failed to discipline another employee -- a Hispanic male -- for recurring tardiness even though Plaintiff herself was disciplined for a similar infraction.  Simonsen Decl. ¶ 7.  But, even in that isolated instance, the hotel immediately rescinded its disciplinary action against Plaintiff once it learned of the inconsistency.  Id.  In short, Plaintiff has not identified any instance where she was actually disciplined for behavior for which others were not disciplined.

Because Plaintiff has not produced sufficient evidence to make out a prima facie case of discrimination, Omni is entitled to summary judgment on her discrimination claims.  Furthermore, even if Plaintiff had made out a prima facie case, Omni would still be entitled to summary judgment here for a different reason: namely, Plaintiff has failed to rebut Omni's proffered justification for her termination -- poor job performance.  As discussed above, Omni has submitted several documents from Plaintiff's personnel file that chronicle her numerous attendance and behavioral problems. See id., Ex. A.  It has also presented evidence that the relevant decision makers, including Simonsen, reasonably relied on this record when they terminated Plaintiff.  Id. ¶ 17.  The various e-mails that Omni received from Plaintiff's co-workers complaining

1  about her lack of professionalism and subpar cooking skills

2  provide further evidence that its decision was not motivated by

3  discriminatory animus.  See id., Ex. B.

4      Plaintiff has not presented any evidence to contradict Omni's

5  employment records or to suggest that Omni has somehow

6  misrepresented the nature of her performance.  Indeed, Plaintiff

7  even admits to making some of the very cooking mistakes that

8  prompted the disciplinary measures she now challenges, including

9  spoiling the pot of rice that led to her termination.  Knighten

10  Decl. ¶ 13.  She also admits to removing the guest logs that led

11  to her December 2009 suspension.  Knighten Decl. ¶ 9.[5]  In sum,

12  Plaintiff has not submitted anything that rises to the level of

13  "specific, substantial evidence of pretext."  Steckl v. Motorola,

14  Inc., 703 F.2d 392, 393 (9th Cir. 1983).  As such, Omni is

15  entitled to summary judgment on Plaintiff's first two causes of

16  action.

17  B.  Retaliation (Third Cause of Action)

18      Plaintiff alleges that Omni retaliated against her for filing

19  administrative complaints with the Equal Employment Opportunity

20  Commission (EEOC).  Specifically, she asserts that her December

21      [5] Plaintiff suggests in her brief that there is a dispute of

22  material fact as to whether Omni was justified in disciplining her for
   improperly defrosting chicken.  The evidence she cites, however, does

23  not reveal any such dispute.  Rather, it confirms that Plaintiff failed
   to follow her supervisor's defrosting instructions on multiple

24  occasions.  For instance, Plaintiff's own responses to Omni's
   interrogatories indicate that she attempted to defrost chicken under

25  running water in September 2010 even though a sous chef had instructed
   her in May 2008 not to defrost chicken that way.  See Pl.'s Further

26  Resp. Interrog. No. 5, at 3-5.  While Plaintiff presents evidence to
   show that her defrosting method was proper, this evidence is ultimately

27  insufficient to raise a dispute of material fact.  The only relevant
   issue here -- that Plaintiff failed to follow her supervisor's

28  instructions -- is not in dispute.

2009 and January 2010 suspensions were issued in response to EEOC charges that she filed in October 2009 and December 2009. She also asserts that the hotel increased her workload in retaliation for filing the second charge. Omni contends that Plaintiff was suspended for non-retaliatory reasons and denies that she was singled out for a workload increase in retaliation for her decision to file the administrative complaints.

To determine whether a plaintiff's retaliation claim can survive summary judgment, courts typically use a burden-shifting framework similar to the one they use for employment discrimination claims. First, the plaintiff must establish a prima facie case of retaliation by submitting evidence that (1) she engaged in protected activity, (2) the defendant subjected her to some adverse employment action, and (3) there was a causal link between the protected activity and the adverse action. Iwekaogwu v. City of Los Angeles, 75 Cal. App. 4th 803, 814 (1999). Next, assuming the plaintiff makes out a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for its challenged employment action. Scotch v. Art Inst. of Cal.-Orange Cnty., Inc., 173 Cal. App. 4th 986, 1021 (2009). Finally, if the defendant meets this burden, the plaintiff must provide evidence that the defendant's proffered reason was pretextual. Id.

In the present case, Plaintiff has failed to present sufficient evidence to make out a prima facie case of retaliation based on Omni's decision to increase her workload. The critical shortcoming in Plaintiff's evidence is that it fails to identify when Omni increased her workload. The only evidence she cites to

United States District Court
For the Northern District of California

support this allegation is an EEOC charge that she filed in May
2011, seven months after her termination, in which she states that
Omni's head chef increased her workload "[s]ubsequent to filing"
her EEOC charge in December 2009.  Simonsen Decl., Ex. G, at 680.
Neither the EEOC charge nor her declaration specifies whether the
chef increased her workload immediately after the December 2009
charge or several months later.  As such, this evidence is
insufficient to support an inference that there was a causal link
between her workload increase and her protected activity.
Numerous courts have recognized that, to establish a causal link,
a plaintiff must submit evidence that the temporal proximity
between the protected activity and the adverse action was "very
close."  Clark County School Dist. v. Breeden, 532 U.S. 268, 273-
74 (2001) (per curiam); Maurey v. Univ. of Southern Cal., 87 F.
Supp. 2d 1021, 1033 (C.D. Cal. 1999).  Plaintiff has not done so
here.  In fact, the only time Plaintiff actually attempted to
pinpoint the date of this workload increase, during her
deposition, she estimated that it occurred in "September of
2009" -- a full month before she filed her first EEOC charge.
Knighten Depo. 263:6-:16.  The workload increase therefore does
not provide a basis for her retaliation claim.

     Nor do the suspensions she received in December 2009 and
January 2010.  Plaintiff has not presented any evidence, other
than timing, to establish a causal link between the EEOC charge
and these suspensions.  Further, even if the timing of the
suspensions alone was sufficient to make out a prima facie case,
Omni has presented non-retaliatory justifications for each of the
suspension decisions.  As noted above, the December 2009

15

suspension notice states that Plaintiff was suspended for removing guest logs from the hotel without permission while the January 2010 notice states that she was suspended for failing to provide adequate notice that she would be missing her shift.   Simonsen Decl., Ex. A, at 52-53, 54-57.   Plaintiff does not contradict the hotel's underlying allegations regarding either of these suspensions.   She admits that she removed guest logs from the hotel, Knighten Decl. ¶ 9, and does not dispute that she called in sick less than ten minutes before she was scheduled to begin her shift.

Plaintiff testified during her deposition that Omni "didn't treat [the guest logs] as confidential" because it let hotel employees use them as "scratch paper."   Knighten Depo. 163:2-:3, 164:13-:14.   But she failed to identify any company policy or statement from a supervisor permitting her to remove these logs from the hotel.   Id. 162:4-163:25.   Furthermore, Plaintiff admitted that she did not obtain all of the guest logs from the scrap paper supply but, rather, relied on co-workers to obtain some of them from other sources.   Id. 164:1-:7.   Most importantly, Plaintiff admitted that she refused to return the logs to the hotel when her supervisor requested them and similarly refused to disclose the names of the co-workers who helped her obtain them. Id. 164:22-165:23.   This conduct alone is sufficient to justify the hotel's disciplinary action.

Thus, because neither the alleged workload increase nor the suspensions ultimately support Plaintiff's retaliation claim, Omni is entitled to summary judgment on this claim, as well.

C.   Harassment (Fifth Cause of Action)

United States District Court
For the Northern District of California

Plaintiff asserts that she was subject to a hostile work environment due to constant harassment by her co-workers and supervisors.

To evaluate a plaintiff's claims of racial or sexual harassment under FEHA, California courts rely on federal case law interpreting Title VII. Etter v. Veriflo, 67 Cal. App. 4th 457, 464, (1999). Under this case law, a plaintiff seeking to survive summary judgment must present evidence that (1) he or she was subjected to verbal or physical conduct related to his or her membership in a protected class; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. Vasquez v. County of L.A., 349 F.3d 634, 642 (9th Cir. 2003) (citing Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998)).

Here, Plaintiff has not presented sufficient evidence to support an inference that she was subject to "severe or pervasive" harassment on account of her race. She has identified just four incidents of harassment in the course of her eight years at Omni that were even plausibly racial in nature. One incident involved the head chef making "generalization[s]" about the eating habits of the Chinese members of the hotel's housekeeping staff. Knighten Depo. 226:1-:24. Another involved a different supervisor using the term, "colored," to refer to African-American people. Id. 228:6-:14. A third incident involved a different supervisor who, while recounting a story about a former sous chef, noted that the former sous chef was "black," which Plaintiff felt was an unnecessary detail in the story. Id. 231:12-:22. The fourth and

most egregious incident of racial harassment occurred when a white kitchen employee used the "N word" while speaking to another black employee. Id. 233:4-:5. Plaintiff acknowledges that the white employee was later disciplined for the comment. Id. 232:12-:14. Taken together, these incidents -- none of which involved physical harassment and none of which were directed at Plaintiff personally -- are not sufficient to establish that Plaintiff was subject to a hostile work environment because of her race. Cf. Lewis v. North General Hosp., 502 F. Supp. 2d 390, 403 (S.D.N.Y. 2007) (finding that "only four incidents over a three-month period" is insufficient to support an inference of unlawful harassment under Title VII).

Plaintiff's evidence of sexual harassment is similarly lacking. During her deposition, she described three incidents of alleged sexual harassment to support her claim. The first occurred sometime "around 2003," when a male kitchen employee propositioned Plaintiff and made a lewd comment toward her. Knighten Depo. 195:16, 200:14-:22. The second occurred in 2004 when a male chef, responding to Plaintiff's comment that the hotel needed more female cooks, stated that "one is more than enough." Id. 188:16-:23. The third incident occurred in 2007 or 2008 when another male kitchen employee asked Plaintiff if she had ever had "a Brazilian" and suggested that they have sex together. Id. 190:3-:5, 191:1-:5. While all three of these comments are obviously offensive, they appear to be isolated incidents rather than part of a consistent pattern of harassment, given that they were spread out over the course of several years. What's more, Plaintiff admits that after she complained to management about the

offending employees, the employees never harassed her again.  Id. 191:17-192:4.

Although Plaintiff identifies other incidents of alleged harassment, she has not presented sufficient evidence to support an inference that these incidents occurred because of her race or gender.  For instance, Plaintiff asserts in her declaration that one sous chef "would deliberately make loud noises in back of [her], e.g., banging pots and pans, breaking up frozen vegetables" Knighten Decl. ¶ 4, but she fails to provide any basis for inferring that the sous chef's behavior was motivated by discriminatory animus.  Indeed, Plaintiff does not even specify whether the sous chef's conduct constituted sexual harassment, racial harassment, or some combination of the two.  In light of this lack of specificity, Plaintiff's evidence is insufficient to support an inference of harassment based on race or gender.  Omni is therefore entitled to summary judgment on this claim.

D.   Failure to Prevent Unlawful Harassment (Fourth Cause of Action)

Plaintiff alleges that Omni failed to prevent her co-workers from harassing her, asserting a claim under section 12940k California Government Code.  California courts have made clear that this claim "is viable only if the defendant engaged in actionable discrimination." Solis v. Walgreen Co., 2013 WL 1942159, at *7 (N.D. Cal.) (citing Trujillo v. N. County Transit Dist., 63 Cal. App. 4th 280, 288-89 (1998)).  Thus, because Omni is entitled to summary judgment on Plaintiff's underlying claims for discrimination and harassment, it is also entitled to summary judgment on her claim for failure to prevent harassment.

E.   Statute of Limitations

In addition to the reasons outlined above, Plaintiff's discrimination claims fail because they are time-barred to the extent they rely on allegations contained in her October 2009 EEOC charge.  Section 12965(b) of the California Government Code provides that an employee who seeks to bring FEHA claims against his or her employer must do so within one year of receiving a right-to-sue notice from the Department of Fair Employment and Housing (DFEH).  Hall v. Goodwill Industries of So. Cal., 193 Cal. App. 4th 718, 725 (2011).

On October 18, 2010, Plaintiff received a right-to-sue notice in response to her October 2009 EEOC charge.  She failed to file this action, however, until April 2012, a full six months after the statute of limitations had run.  Thus, any discrimination claims based on acts alleged in the October 2009 EEOC charge are barred by the statute of limitations.

Although Plaintiff argues that her subsequent EEOC charges effectively revive her time-barred claims, case law makes clear that they do not.  If plaintiffs were able to revive time-barred FEHA claims simply by filing a new administrative complaint, then the statute of limitations would effectively be meaningless.  This is why another court in this district has expressly rejected Plaintiff's argument in the past.  Bill v. Berkeley Unified Sch. Dist., 2004 WL 2075447, at *11 (N.D. Cal.) ("Plaintiff received a right to sue letter on May 16, 2002 for his May 8, 2002 charge. Because Plaintiff failed to bring a civil action under the FEHA within one year from the date of this letter, to the extent Plaintiff's FEHA claim is based on the allegations in the May 8,

2002 charge, that claim is barred by the statute of limitations."). Thus, to the extent that Plaintiff's discrimination and retaliation claims are based on events that were described in her October 2009 EEOC charge, those claims are precluded by the statute of limitations.

Plaintiff correctly notes that, unlike other discrimination claims, harassment claims are not time-barred when the alleged harassment continues into the acceptable statutory filing period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ("It does not matter, for purposes of the statute [i.e., Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period."). However, Plaintiff has not presented any evidence that any incidents of alleged racial and sexual harassment occurred during the statutory filing period here. Accordingly, Plaintiff's harassment claims are also time-barred.

F.   Evidentiary Objections

Omni objects to certain conclusory statements in Plaintiff's declaration. Because the Court does not rely on those statements here, Omni's evidentiary objections are overruled as moot.

Plaintiff objects to the Simonsen's declaration by asserting, "Most of the Declaration is hearsay." Opp. 9. Although Plaintiff fails to provide any further explanation of the exact nature of this objection, her argument appears to be based on the fact that Simonsen's declaration cites various documents from Plaintiff's personnel file, including suspension notices, work improvement plans, performance reviews, and e-mail complaints submitted by other Omni employees. Simonsen's reliance on these documents,

United States District Court
For the Northern District of California

however, does not render the declaration inadmissible.  Almost all of the documents Simonsen cites, such as Plaintiff's performance reviews and suspension notices, fall under the business records exception to the hearsay rule because they were created in the course of Omni's regular business by knowledgeable hotel employees at the time the relevant events occurred.  Fed. R. Evid. 803(6); see also Rogers v. Oregon Trail Elec. Consumers Co-op., Inc., 2012 WL 1635127 (D. Or.), (holding that "formal memoranda issued in conjunction with disciplinary action and performance reviews pertaining to one individual" fell within the business records exception).  Furthermore, Simonsen was entitled to rely on these documents to make her employment decisions.  Her declaration does not rely on most of them for the truth of the matter asserted but, rather, to show that she received numerous complaints about Plaintiff from various sources.  See, e.g., Mazzella v. RCA Global Commc'ns, Inc., 642 F. Supp. 1531, 1543 (S.D.N.Y. 1986) (holding that "testimony concerning the complaints [the witnesses] received about [the plaintiff's] work performance were properly admitted at trial as nonhearsay evidence" because they were presented "for the purpose of proving that [the witnesses] had received these complaints"), aff'd, 814 F.2d 653 (2d Cir. 1987).  Plaintiff's objection is therefore overruled.

CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Docket No. 29) is GRANTED; Defendant's evidentiary objections are OVERRULED as moot; and Plaintiff's evidentiary objections are OVERRULED.

The Court GRANTS the parties' requests to take judicial notice of arbitration decisions issued after the summary judgment hearing (Docket Nos. 50, 52).  Neither decision suffices to create a dispute of material fact or alters the outcome in this case. The arbitrator's May 28, 2013 decision relates to a September 2009 disciplinary action on which the Court has not relied in this order while the June 4, 2013 decision lends further support to Defendant's position.

IT IS SO ORDERED.


Dated: 8/28/2013                    CLAUDIA WILKEN
                                    United States District Judge